**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| GenCorp, Inc., | : | Case No. 1:93CV2269 |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| Olin Corporation, | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| Defendant | : | |

Currently pending is the motion of Olin Corporation ("Olin") seeking entry of a declaratory judgment in its favor for future response costs at each of the sites involved in this litigation.

While the parties are well aware of the procedural history of the action pertinent to this motion,[1] this Court believes that it bears repeating, beginning with this Court's decision determining that GenCorp was liable under § 113(f)(1) of CERCLA as an owner or operator of the TDI Plant and as an arranger for disposal of wastes at Big D.  GenCorp was deemed to have been liable for 40 percent of Olin's response costs for each site except Big D, where GenCorp's share of liability was 30 percent.

Prior to the entry of final judgment, GenCorp requested reconsideration of the question of

---

[1] In the Memorandum Opinion and Order entered March 13, 2006 this Court set out this same history, stating that it came from "this Court's decision denying the motion of GenCorp for summary judgment on Olin's claims for future response costs and its motion for relief form judgment finding GenCorp liable to Olin for past environmental response costs." That statement was in error.  In the referenced ruling a shorter variant of the history appeared, the longer version having been in a prior draft.

1

liability under § 113(f)(1) of CERCLA in light of the decision of the Fifth Circuit Court of Appeals in Aviall Services, Inc. v. Cooper Industries, 263 F.3d 134, 145 (5th Cir. 2001) ("Aviall I"), in which it was held that a pending or completed civil action under Section 106 or 107(a) of CERCLA is a prerequisite to filing a § 113(f)(1) contribution claim. That court subsequently granted rehearing en banc, 278 F.3d 416 (5th Cir. 2001). GenCorp relied on that series of events in an attempt to convince this Court to overturn its decision on liability and to dismiss Olin's § 113(f)(1) contribution claim.

While that request was pending, the Fifth Circuit Court of Appeals, sitting en banc, reversed the panel decision in Aviall Services, Inc. v. Cooper Industries, 312 F.3d 677 (5th Cir. 2002) ("Aviall II"). Once again, GenCorp requested that its motion for reconsideration be granted, this time focusing on the position taken by the government and the dissenting opinion. This Court denied that motion for reconsideration, and entered judgment for Olin pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

GenCorp appealed that decision to the Sixth Circuit Court of Appeals, challenging this Court's determination that GenCorp was liable for the cleanup of Big D as a consequence of its role as an arranger, as well as its issuance of a judgment under Rule 54(b). The appellate court affirmed this Court's findings on those issues.

Despite having initially indicated to the appellate court that there would be an assignment of error addressing the Aviall issue, there was no mention of the issue in the briefing on appeal, even though by the time the briefs were filed Cooper Industries had petitioned the United States Supreme Court for certiorari in the Aviall case. In fact, the Supreme Court granted certiorari and the briefing was completed prior to the oral arguments in this case before the Sixth Circuit, yet there was still

no mention of the Aviall issues in the oral arguments to the Sixth Circuit.

It was only after the Sixth Circuit affirmed this Court's decision on GenCorp's liability as an arranger for the cleanup of Big D that GenCorp petitioned the appellate court for rehearing en banc, mentioning that Cooper Industries had brought the Aviall case before the Supreme Court and that if the judgment of the Fifth Circuit Court of Appeals was reversed then "Olin's contribution claim in this case may be barred."

Olin cross-appealed this Court's denial of its request for declaratory judgment as to GenCorp's liability for "future" costs incurred by Olin after December 31, 1999, the Phase III trial cut-off date.  The Sixth Circuit vacated that portion of this Court's Rule 54(b) judgment in which declaratory relief to Olin for future costs was denied, holding that such declaratory relief would be warranted under CERCLA if there was a "case or controversy" as to future costs and, after finding the record insufficient to address the case or controversy issue, remanding the case to this Court to make such a determination.

In Cooper Industries v. Aviall Services, Inc., 543 U.S. 157 (2004), the Supreme Court did reverse the Fifth Circuit's en banc decision.

After that decision was issued, GenCorp filed with the Sixth Circuit a reply brief in support of petition for rehearing en banc in which GenCorp addressed the effects of the Supreme Court's decision in Cooper Industries on this case, arguing that Olin's contribution claims were now barred because Olin had not been the subject of a civil action under Sections 106 or 107(a) of CERCLA, but rather incurred response and remediation costs by complying with UAOs which were not deemed "civil actions."

Based on that decision, GenCorp also filed with the Sixth Circuit a motion to vacate and

remand its decision on GenCorp's liability in light of the Supreme Court's decision in Cooper Industries v. Aviall Services, Inc., supra, which GenCorp argued "undermine[d] the sole basis for GenCorp's liability." GenCorp argued, as it does in the motions at issue herein, that under the Supreme Court's decision contribution actions may only be brought under § 113(f)(1) of CERCLA by parties against whom a civil action had been brought or was pending under either Section 106 or 107(a) of CERCLA, and disputed Olin's claim that the unilateral administrative orders ("UAOs") issued against it constituted "civil actions" sufficient to fulfill the prerequisite for filing under § 113(f)(1).

In opposing that motion to vacate, Olin argued as it now does, that GenCorp had waived the Aviall issue as well as the issue as to whether a UAO issued under Section 106 could be deemed a "civil action" for purposes of filing a claim for contribution under § 113(f)(1); that even if the issues had not been waived, the Section 107(a) cost recovery actions which had been brought by the EPA against Olin for Big D and Fields Brook, as well as the case initiated under Section 107 by GenCorp against Olin for a determination of liability, and the Section 107 action brought against Olin by PRPs for RES (Reserve Environmental, Inc. v. Detrex Corp., Case No. 4:93CV1157 (N.D.Ohio)), all satisfied the prerequisite for filing a claim for contribution under § 113(f)(1) set forth in Cooper Industries v. Aviall Services, Inc., supra.

On January 21, 2005, the Sixth Circuit denied GenCorp's motion to vacate its prior judgment affirming this Court's decision regarding GenCorp's liability and remanding the case to this Court for the limited determination as to whether there was a "case or controversy" as to future costs owed to Olin.

On March 29, 2005, the Sixth Circuit denied GenCorp's petition for rehearing en banc.

4

GenCorp then filed with the United States Supreme Court a petition for writ of certiorari, requesting the court to consider the issue reserved in Cooper Industries, being whether UAOs could be considered "civil actions" to satisfy the prerequisite for filing under § 113(f)(1). That petition was denied on October 11, 2005.

Two days later, on October 13, 2005, GenCorp filed with this Court on remand its motion for summary judgment and for relief from judgment.

In the ruling entered November 3, 2005 this Court denied GenCorp's motion for summary judgment and motion for relief from judgment, holding that the language of the limited mandate of the Sixth Circuit Court of Appeals only permitted a narrow decision on whether a "case or controversy" exists with respect to continuing clean-up costs. If that jurisdictional requirement is satisfied, then entry of a declaratory judgment is in order.

Olin maintains that evidence that such a case or controversy exists can be found in GenCorp's own statements in submissions made during the course of this litigation, including the complaint, reply to Olin's counterclaim, Phase III stipulations, Phase III post-trial briefs, and appellate brief, as well as Phase III evidence that Olin was likely to incur future costs and evidence that following the Phase III trial Olin in fact incurred additional response costs at the sites at issue in this litigation. Olin also asserts that if declaratory judgment is entered in its favor, this Court should retain jurisdiction to resolve issues pertaining to future costs.

GenCorp opposes the entry of declaratory judgment, not by asserting the absence of a case or controversy, but rather, by rehashing its heretofore unsuccessful argument on the issue of liability under §113(g)(2). GenCorp also challenges the notion that this Court should retain jurisdiction to adjudicate future costs, arguing that doing so would be inconsistent with the plain language of

§113(g)(2) and would impermissibly create jurisdiction over a future dispute.

The Sixth Circuit Court of Appeals set forth the requirements for granting a declaratory judgment in its opinion affirming the liability determination in this case and remanding to determine the issue of case or controversy:

> In its cross-appeal, Olin also claims that the district court should have "entered a declaratory judgment finding [GenCorp] liable for Olin's allowable response costs incurred after December 31, 1999, at the previously-determined percentage share for each site." D. Ct. Op. of Jan. 22, 2003, at JA 602. Section 113(g)(2), the relevant statute, provides as follows: In any [] action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent . . . actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2) (emphasis added). Case law confirms that the words mean what they say. In the context of a 107 action, this Court has held that "the entry of declaratory judgment as to liability is mandatory." Kelley v. E.I. DuPont De Nemours & Co., 17 F.3d 836, 844 (6th Cir. 1994). GenCorp responds that whether declaratory relief as to future liability in a contribution suit is mandatory is an open question in this circuit-- one on which other courts have divided and that awarding declaratory relief is inherently a "discretionary" function of district courts. GenCorp Reply Br. at 53.
>
> We agree with Olin insofar as it claims that requests for declaratory judgments concerning future response costs in §107 and § 113(f) suits must be treated alike. The sections governing contribution "work in conjunction" with the liability provisions of § 107(a), as "parties seeking contribution" must turn to "§ 107 to establish the basis and elements of liability of the defendants." Centerior, 153 F.3d at 350; see also Dent v. Beazer Materials & Servs., Inc., 156 F.3d 523, 531-32 (4th Cir. 1998) (determining, in a contribution action, that a court must enter declaratory relief as to future response costs where liability for existing costs is established); AlliedSignal v. Amcast Int'l Corp., 177 F. Supp. 2d 713, 757 (S.D. Ohio 2001).
>
> Entry of a declaratory judgment, however, cannot be fully mandatory. Under Article III of the United States Constitution, "Congress cannot create a right of action where no case or controversy otherwise exists." Kelley, 17 F.3d at 844. In order to satisfy the "case or controversy" requirement, "a party seeking declaratory relief must

> allege facts to support a likelihood" that it will incur future costs recoverable under CERCLA. Id. at 845. Based on the record before us, we are unable to find sufficient evidence of future response costs to satisfy the "case or controversy" requirement. Therefore, we remand this jurisdictional issue to the district court for initial consideration of whether a "case or controversy" exists, and if so, for the entry of a declaratory judgment for future response costs.

GenCorp., Inc. v. Olin Corp., 390 F.3d 433, 451 (6th Cir. 2004).

In determining whether a case or controversy exists in the context of a declaratory judgment:

> "the question... is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Kelley v. E.I. DuPont De Nemours & Co., 17 F.3d 836, 844-45 (6th Cir. 1994), quoting Detroit, Toledo & Ironton R.R. Co. v. Consolidated Rail Corp., 767 F.2d 274, 279 (6th Cir. 1985). There must be a threatened injury which is "sufficiently immediate and real," as evidenced by "facts to support a likelihood that [an] opponent's injurious 'conduct has continued or will be repeated in the future.'" Id. quoting Detroit, Toledo & Ironton R.R. Co. v. Consolidated Rail Corp., supra and Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).

Turning to the present case, as regards GenCorp's assertion that Olin has failed to satisfy the requirements for demonstrating the existence of a case or controversy by reason of the fact that there should not have been recovery for contribution under CERCLA for any of the sites, that argument has been repeatedly rejected by this Court and the Sixth Circuit and will not be revisited in this opinion.

On the other hand, Olin's evidence that an actual controversy exists as to its liability for future response costs included not only references to admissions made in that regard by GenCorp in its pleadings to this Court and to the Sixth Circuit, but also evidence submitted during the Phase

7

III trial indicating the likelihood that Olin would incur future costs, including the testimony of Mr. Garland E. Hilliard, Olin Big D Site Team Leader, who stated that there would be ongoing response activities at Big D, such as treating and sampling contaminated groundwater, as well as routine operation and maintenance activities geared to preventing further contamination of groundwater from leaks in the landfill caps or from erosion of the cover or creek bank where the south slope of the landfill and the Conneaut Creek merge.

The Phase III trial testimony of Mr. Curtis M. Richards, head of Olin's environmental remediation group and team leader for the Fields Brook site, provided evidence of future costs directed to that site, including completion of clean up and long-term maintenance and care associated with that clean up.

Mr. Richards and Mr. Michael J. Bellotti, another Olin employee, also testified during the Phase III trial as to ongoing costs pertaining to the TDI Plant site, including costs for sampling and measuring levels in the groundwater in monitoring wells, chemical analysis of the samples taken therefrom, inspection of the site, and maintaining the site postings.

Olin has also provided evidence by way of affidavits from Messrs. Hilliard and Richards that subsequent to the Phase III trial additional response costs were actually incurred at each of the sites at issue. Mr. Hilliard stated that at Big D monitored natural attenuation[2] has been proposed to the EPA as a permanent remedy, in light of the fact that the monitoring/sampling has shown no migration of contaminants off-site. A new monitoring well has been installed for this purpose. He further stated that Olin has spent in excess of $1.3 million in response costs for Big D since 1999, with additional costs having been incurred each year from 2000 through 2005. Mr. Hilliard also

---

[2] A process by which natural organisms in the groundwater are used to remove contaminants, requiring continued monitoring, via sampling the groundwater for contaminants, to determine whether the process is working.

elaborated as to operation and maintenance activities, as well as monitoring activities, which will take place in the future.

Mr. Richards stated that as regards Fields Brook Olin has payed in part for additional response actions undertaken on behalf of the Fields Brook PRP Group, including costs for sediment removal and dewatering, removal of contaminated soils from the adjacent flood plains, and disposal of contaminated material into a landfill. According to his affidavit, from January 1, 2000 until the present, Olin has spent approximately $1.4 million for these actions and will continue to incur costs for operating, maintaining and monitoring the landfill where the hazardous materials were deposited.

As regards the TDI Plant site, Mr. Richards stated that subsequent to 1999 Olin has continued to incur costs for sampling and monitoring contaminants in the groundwater, and will continue to do so for the foreseeable future. During the period from January 1, 2000 to the time of filing Olin's brief in support of declaratory judgment, Olin has incurred more than $63,000 in costs.

Olin has also submitted copies of letters directed to GenCorp in which Olin has demanded payment for GenCorp's share of the foregoing costs, but GenCorp denied any obligation to pay its portion of those costs, stating in responsive letters, "GenCorp reserves its rights to contest on any and all bases the propriety and recoverability of all alleged response costs claimed by Olin."

Based upon the foregoing, this Court is of the opinion that Olin has submitted evidence of a case or controversy, in that there is evidence of a substantial dispute between these parties, as well as evidence that Olin has continued to incur costs recoverable under CERCLA subsequent to entry of judgment on May 10, 2002. In its mandate to this Court, the Sixth Circuit instructed that once such a case or controversy was found, this Court was to enter a declaratory judgment for future

9

response costs.[3]

       That being so, Olin's motion is hereby granted for response costs incurred at each of the sites involved in this litigation, and an appropriate final judgment order will be entered. That order will provide for retention of jurisdiction by this Court to resolve disputes between the parties as to such costs. This Court, however, will not revisit the issue of the percentages of allocation, and will only address the question of whether particular costs were consistent with the requirements of the NCP and/or reasonable and necessary. The parties are cautioned that this Court will look with extreme disfavor upon petty disputes, which could lead to the imposition of sanctions under this Court's inherent authority if this Court considers a party not to be acting in good faith.

                                                             s/DAVID S. PERELMAN
                                                             United States Magistrate Judge

DATE:    July 20, 2006

---

[3] In this Court's opinion dated March 13, 2006, this Court rejected GenCorp's claim that "future response costs" could not refer to costs incurred since the time of the Phase III cut-off date by stating, "It has always been clear to this Court that in referring to 'continuing' clean-up costs the Sixth Circuit meant from the date of this Court's liability judgment on award."